## McCLENDON v. WELLS.

1. In an action *ex contractu* on an attachment bond, the Circuit judge erred in charging the jury that if defendant was actuated by malice in obtaining the attachment with a view to injuring this plaintiff, they could give punitive damages.

2. And he further erred in instructing the jury that the plaintiff could in such action recover damages for a trespass in seizing and selling the property under a chattel mortgage, which defendant had purchased and thereunder seized the property attached at the instant of the dissolution of the attachment—no such cause of action being stated in the complaint.

3. Moreover, being mortgagee after condition broken, defendant committed no trespass in seizing the chattels, and the only remedy of the mortgagor was an action before sale to redeem, or after sale for accounting, and in either case the mortgagor would be required to pay the mortgage debt, and also all other indebtedness to the mortgagee. *Reese* v. *Lyon, ante* 17, approved.

4. Tender by the mortgagor after condition broken and seizure would not revest title in the mortgagor; besides, a tender of the debt, but not of interest and expenses, was insufficient.

5. The mortgagee had the right, after condition broken, to take peaceable possession of the chattels, wherever found, or, having them then in his possession, to retain them.

6. A general denial in a reply does not permit plaintiff to prove an affirmative defense to the counter-claim. The case being remanded, permission was given to plaintiff by this court to amend his reply.

7. Admissions made by the mortgagees, of the amount due on the mortgage, prior to their assignment of it, are admissible in evidence against their assignee.

---

Before Hudson, J., Laurens, September, 1883.

The exceptions and the opinion of this court constitute a full statement of the case. The former were as follows:

1. Because his Honor erred, it is respectfully submitted, in

charging the jury that the defendant was bound to return the property taken under the attachment when said attachment was released, although the defendant, at the time of said release, was the owner of a chattel mortgage of said property with condition broken.

2. Because his Honor erred in charging the jury that the plaintiff could recover the value of the property taken under the attachment, when the property was not sold under the attachment but was sold by the defendant after the release of the attachment by virtue of a power vested before the said release, in him as assignee of a chattel mortgage with condition broken.

3. Because his Honor erred in charging the jury that the plaintiff could recover damages for the loss of the property resulting from a cause other than the attachment, when the allegations of the complaint did not extend to any source of injury outside of the attachment.

4. Because his Honor erred in charging the jury that the plaintiff could recover in this action the proceeds of the sale of the property sold by the defendant under a chattel mortgage with condition broken, on the ground that the plaintiff did not owe the full amount of the debt secured by said mortgage, when it appears that the plaintiff executed the said bond and mortgage to Moore, Quarles & Co., for a greater amount than was actually due for the purpose of defrauding his creditors.

5. Because his Honor erred in admitting as evidence a paper purporting to be a statement made by Moore, Quarles & Co. on the mortgage, when the statement did not refer to this particular mortgage, and when the defendant, the assignee, did not have the opportunity to cross-examine the maker of the statement, and when Quarles, one of the assignors of said bond and mortgage, was dead.

6. Because his Honor erred in charging the jury that the plaintiff could recover on the bond, when the execution and delivery of the bond upon which the action was brought was not proved by any evidence whatsoever.

7. Because his Honor erred in charging the jury that the amount due on the mortgage was already paid.

8. Because his Honor erred in charging the jury that the tak-

ing and disposing of any property over the amount due on the mortgage, to wit, $85.65, was a trespass, and the defendant was liable in this action for said trespass, when the defendant was not sued as trustee for the surplus.

9. Because his Honor erred in charging the jury that the amount of $85.65 was a good tender when the bond was overdue and the property had been taken under a mortgage to secure the same, when no cost nor interest was tendered.

10. Because his Honor erred in refusing to charge the jury as requested by defendant's counsel, that the plaintiff coming into a court of justice must show that his title to equity is unmixed with any gross misconduct or negligence of himself or his agents.

11. Because his Honor erred in charging the jury that they could give punitive damages if there was any malice on the part of the plaintiff in attachment.

12. Because his Honor erred in allowing the plaintiff to show partial want of consideration of the said bond and mortgage, when the reply sets up only a general denial.

*Messrs. F. P. McGowan* and *W. H. Martin*, for appellant.

*Messrs. Ball & Watts*, contra.

March 10th, 1883. The opinion of the court was delivered by

Mr. Justice McIver. On December 3d, 1881, Wells, defendant herein, commenced an action against McClendon, the plaintiff herein, to recover the sum of $205.06, the value of certain goods advanced by one Pope to McClendon, at the request and upon the credit of Wells. At the time of commencing said action, Wells sued out a warrant of attachment, under which the sheriff's deputy, on December 6th, 1881, seized certain chattels, as the property of McClendon, viz., one road wagon, one bay mare, one black mule and about 150 bushels of cotton-seed, which were duly appraised at the sum of $273. On December 12th, 1881, the attorneys of McClendon made a motion before the clerk to dissolve the attachment for irregularity, which motion was refused, and no appeal was taken therefrom.

On December 15th, 1881, Wells took an assignment, in writing, from Moore, Quarles & Co., of a note and mortgage given by McClendon to said Moore, Quarles & Co. on November 19th, 1881. The note was for the sum of $500, and was due on the day of its date, and the mortgage given to secure the payment of said note covered all the property seized under the attachment, except the cotton-seed, as well as other property of McClendon. On December 17th, 1881, Wells had the sheriff to release the attachment and paid the costs on the same, and on the same day Wells appointed, in writing, the same deputy who had levied the attachment, his agent, to take possession of the property embraced in the mortgage and dispose of the same according to law. On the same day the deputy delivered the cotton-seed, which, as has been mentioned, was not embraced in the mortgage to McClendon, but retained the other property seized under the attachment, by virtue of his authority as agent of Wells, the assignee of the original mortgagees, Moore, Quarles & Co., and after duly advertising sold the same at public auction for $231, cash. Out of this sum the deputy paid the expenses of keeping the stock and of the sale, and the balance, to wit, the sum of $200.75, was credited on the mortgage. On March 1st, 1882, the action which had been commenced by Wells against McClendon to recover the amount of the account for $205.06, was discontinued on the payment of costs.

The action herein was commenced on September 11th, 1882, and was brought upon the undertaking, which was in the sum of $250, executed by Wells when he sued out the warrant of attachment hereinabove mentioned. The complaint, after setting out the commencement of the original action, the issuing of the warrant of attachment and the execution of said undertaking, alleged: "That the said writ of attachment was illegally issued and obtained; that the suit instituted was never reduced to judgment, but abandoned; that under said writ of attachment property, consisting of mules, horses and wagons, was seized and illegally disposed of, of the value of $800; the condition of the said bond mentioned in paragraph two of this complaint, has been broken to the damage of this plaintiff $1,000." Then, after setting forth that a copy of said bond or undertaking was filed with the

complaint as a part thereof, demanded judgment for $1,000 damages and for costs. The answer, after denying all the allegations in the complaint as to the illegality of the attachment, and denying that any property was ever sold under the attachment, set up as a counter-claim the note and mortgage hereinbefore mentioned given by McClendon to Moore, Quarles & Co., and by them assigned to Wells, and claimed judgment for the balance due thereon. The reply of the plaintiff was a general denial of all the allegations of the answer in reference to the counter-claim.

Testimony was offered tending to show that though the note, secured by mortgage, of McClendon to Moore, Quarles & Co. was on its face for $500, yet the amount really due was only $85.65, and while it did not distinctly appear what was the object in giving the note for an amount so much larger than was really due, there were circumstances pointing to the conclusion that McClendon's purpose was to shield his property from his creditors, especially from Wells. It also appeared in evidence that Wells only paid Moore, Quarles & Co. $85.65 for the note when it was assigned to him, though it did not distinctly appear that Wells, when he bought the note, had notice that it was given for a much larger amount than was really due, but the reasonable inference would be, that he must have known it, or at least had very good reason to suspect that such was the fact. It also appeared in evidence that McClendon made a tender to Wells of $85.65, as the amount due on the note secured by the mortgage, the date of which tender was fixed by one of the witnesses as January 1st, 1882, but a few days before the sale under the mortgage, and of course, therefore, after the breach of the condition of the mortgage.

The Circuit judge charged the jury that the action was on the attachment bond, and " if Wells was actuated by any malice in obtaining the attachment with a view to injuring McClendon, the jury could give punitive damages; but, if there was no malice, then they could give only the actual damages sustained, not exceeding the penalty of the bond. If Pope sold goods of the value of $205.06 to McClendon in the name of Wells, and solely on his credit, it was Wells' debt to Pope and McClendon's

debt to Wells, and Wells had a good cause of action. The affidavit upon which the attachment was issued was clearly insufficient, and the action having been discontinued, the attachment was illegal. When Wells released the attachment it was his duty to return the property. The defendant does not ask for the $205.06 he paid Pope for McClendon, but he sets up as a defense a bond and mortgage under which he sold the property. The bond and mortgage were transferred to Wells after due, and if only $85.65 were due to Moore, Quarles & Co., Wells can stand upon no better ground than Moore, Quarles & Co., and McClendon cannot suffer. The taking and selling of McClendon's property by Wells, under the mortgage, for more than he paid Moore, Quarles & Co. for the bond and mortgage, viz., $85.65, was a trespass, for which the defendant was liable in this action. If McClendon offered Wells $85.65, this was a good tender, but it does not do away with the debt. All that Wells was entitled to was $85.65, and this he has been paid out of the proceeds of the sale under the mortgage. That the jury could give the plaintiff the value of the property sold under the mortgage, less the $85.65 Wells paid for the mortgage, subject, however, to the limit of the attachment, which was $250."

In response to an inquiry from the jury, whether the defendant was liable for the $200.75 credited on the mortgage, the Circuit judge charged them, " that the defendant was so liable in this action, and they could give the full value of the property sold under the mortgage, less the $85.65, but not to exceed the penalty of the bond, and that this action terminated Wells' liability under the mortgage."

The defendant's request to charge raised an abstract question which we do not think applies to the case, under the view which we take of it, and therefore need not be specially considered. The defendant appeals on numerous grounds, which need not be set out here, as we do not propose to consider them *seriatim*, but simply to adjudge what we regard the material questions in the case.

It is conceded that the action in this case was based solely on the undertaking or bond executed by the defendant when he sued out the warrant of attachment. The condition of this bond, as

stated in the complaint, was "for the payment to the said W. T. McClendon of all damages, costs and charges which might accrue to the said W. T. McClendon by reason of the issuing and obtaining the writ of attachment aforesaid, and all damages consequent to him from any illegality in obtaining and suing out the same." It was, therefore, not an action of tort to recover damages for trespass, but it was an action *ex contractu*, based upon the obligation assumed by the defendant in the undertaking, to pay all such damages as the plaintiff might sustain by reason of any illegality in the attachment. The measure of the damages, therefore, which the plaintiff was entitled to recover, was the amount to which he had been injured by the illegal seizure of his property under the attachment. He was entitled to compensation for his losses—not to have the defendant punished for his illegal acts. We think, therefore, that the Circuit judge erred in saying to the jury, that if Wells was actuated by malice in obtaining the attachment with a view to injuring McClendon, they could give punitive damages.

So, too, we think it was error to instruct the jury that the plaintiff could, in this action, recover damages for any alleged trespass in seizing and selling the property under the mortgage. No such cause of action is stated in the complaint, and we are unable to see, under an action on the attachment bond, how the conduct of the defendant in enforcing his mortgage could have properly been considered. But, more than this, Wells having acquired the ownership of the mortgage, stands in the same position as the original mortgagees, and the condition of the mortgage having been broken, he had become the legal owner of the property mortgaged, and entitled to take possession of it wherever he could find it, or retain possession of it, for the purpose of enforcing his rights under the mortgage. *Flenniken* v. *Scruggs*, 15 *S. C.* 88 ; *Reese* v. *Lyon, ante, p.* 17, and the authorities there cited. In doing so, he would not become a trespasser, and liable to an action for damages as such, but the remedy of McClendon, if he felt himself aggrieved, would be to bring an action to redeem the mortgaged property before the sale took place, or after the sale to bring his action for an account of the proceeds of the sale of the mortgaged property, in either of

which actions McClendon would be required to pay, not only the amount secured by the mortgage, but also any other debt which might be due by him to Wells. *Reese* v. *Lyon, supra.*

The tender of the alleged amount due, even if it had been of the full sum due, could not have the effect of revesting the title to the mortgaged property in the mortgagor, as it was made after condition broken. *Reese* v. *Lyon, supra,* and the authorities therein cited. But, besides this, the mortgage debt was an interest-bearing demand, and no interest was tendered, nor were the costs and expenses attending the seizure of the property tendered, which should have been done, as the alleged tender was made after such seizure and after expenses had been incurred in keeping the mortgaged animals.

Wells being, as we have seen, the legal owner of the mortgaged property, as soon as the condition of the mortgage was broken, was under no obligation to return such property when the attachment was released, for, as such owner, he had a right to take it into his possession wherever he could find it, provided he committed no violation of the criminal law in so doing, and, of course, he had the right to retain possession of it.

Next, as to the plaintiff's defense to the defendant's counter-claim. The rule is, that a general denial only puts in issue such facts as it is necessary for the plaintiff (or the defendant, when he puts in a counter-claim,) to prove in order to establish his cause of action; and if the defendant, or the plaintiff, as the case may be, desires to establish and rely upon any affirmative defense, he must plead such defense, and cannot, under a general denial, be permitted to go into evidence to establish such defense. In this case, all that the defendant was required to prove in order to establish his counter-claim, was the execution of the note and mortgage and the assignment by the original mortgagees to him; and the plaintiff by simply putting in a general denial was not at liberty to introduce evidence to establish the affirmative defense upon which he relied. The note being under seal, of itself imported a consideration, and if the plaintiff desired to show that by fraud, misrepresentation, or otherwise, he was induced to sign a note for a much larger amount than was really due, he should have specially pleaded such defense, so as to

advertise the defendant of the issue he would have to meet. *Pom. Rem.*, § 660, *p.* 692; *Lyles* v. *Bolles*, 8 *S. C.* 258; *Pender* v. *Lancaster, MSS. Dec., No.* 748, filed June 25th, 1879. But, as the case must go back for a new trial, we think it right, under the liberal provisions of the code, that the plaintiff should have an opportunity, if he so desires, of amending his reply so as to set up any affirmative defense he may desire to the counter-claim.

We do not think that the fifth and sixth grounds of appeal can be sustained. The paper objected to was a written admission of the original mortgagees of the amount really due, bearing date prior to the transfer to the defendant, and was, therefore, clearly admissible; and the fact of the death of one of the mortgagees, even if it would have any effect, nowhere appears in the case and cannot be considered.

The sixth ground is based upon a misapprehension evidently. The defendant, by his pleading, admitted the execution of the attachment undertaking, inasmuch as it was alleged in the complaint and not denied in the answer, and, therefore, there was no necessity to introduce any evidence upon that point.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial, with leave to the plaintiff to amend his reply as herein indicated.